IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

*FAIZ AHMED YAHIA SULIMAN,*

                Petitioner

                                        **Civ. No. 1:06-CV-01758 (RMC)**

v.

**GEORGE W. BUSH,** *et al.,*

                Respondent

## PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

Petitioner Faiz Ahmed Yahia Suliman, through his attorney, in response to Respondent's Motion to Dismiss ("Motion to Dismiss")[1], respectfully request that this Court (i) deny Respondent's Motion to Dismiss his habeas actions, and (ii) hold this action in abeyance pending Petitioner's exhaustion of his remedies in the Court of Appeals under the Detainee Treatment Act of 2005[2] ("DTA") and the filing in the Supreme Court of a renewed petition for certiorari to review the Court of Appeals' jurisdictional holding in *Boumediene v. Bush*[3] ("*Boumediene I*"), or the Supreme Court's resolution of the same jurisdictional issue as presented in a pending original habeas corpus petition filed in *In re Ali*, No. 06-1194, which challenges the MCA jurisdictional holding of the Court of Ap-

---

[1] Respondent's Motion to Dismiss, *Al Anazi v. Bush*, 370 F. Supp. 2d 188 (D.D.C. 2005) (No. 05-0345).

[2] Detainee Treatment Act of 2005, Pub. L. No. 109-148, 119 Stat. 2680 (2005).

[3] *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007).

peals, and (iii) in the event that it determines it lacks jurisdiction over the action, transfer this habeas action to the Court of Appeals pursuant to 28 U.S.C. § 1631 for consolidation with Petitioner's DTA actions (to be filed shortly herewith).

Respondent argues that dismissal of this habeas action is consistent with the established law of this Circuit as well as the clear intent of Congress. Respondent fails to recognize that the constitutionality of the Military Commissions Act of 2006[4] ("MCA") is still in dispute and being actively litigated. In the Supreme Court's denial of certiorari in *Boumediene v. Bush ("Boumediene II")*,[5] three Justices state in the dissent that the habeas-stripping provision of the MCA is a "significant [question]…warranting…review."[6] Two more Justices stated that they could not review the issue "at this time"[7] because Petitioner had failed to exhaust alternative remedies.[8] In other words, five Justices have signaled a willingness to rehear the issues raised in *Boumediene I* once alternative remedies have been exhausted.

This is far from a case of first impression for the courts. In a prior case, the Supreme Court held that in habeas actions where alternative remedies exist, and where there is a danger of dismissal of the underlying habeas action by statute while those remedies are being exhausted, the original court of the pleading would be abusing its discretion

---

[4] Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600 (2006).

[5] *Boumediene v. Bush*, 127 S. Ct. 1478 (2007).

[6] *Id.* at 1480..

[7] *Boumediene II*, 127 S. Ct. 1478 (2007).

[8] It is the contention of habeas counsel that the alternative remedies provided under the DTA fails to meet the standard required under *I.N.S. v. St. Cyr*, (533 U.S. 289 (2001) et sequelae to lawfully suspend habeas corpus.

were it *not* to stay dismissal pending abeyance of said exhaustion of remedies, provided there is good cause, potentially meritorious claims, and the absence of unreasonable delay.

Respondent would have this court believe that it has no choice but to apply the holding in *Boumediene I* to this habeas action.  But this court is not bound by the decision *Boumediene I*; this court has the discretion to stay this action while the jurisdictional issues continue to be litigated.  Respondent argues that this court has no jurisdiction to hear Petitioner's habeas action.  It is well established that courts have jurisdiction to determine their own jurisdiction.  Nor has the Court of Appeals even issued its mandate in *Boumediene I*.  The *Boumediene* Petitioners have asked the court to stay the issuance of its mandate pending the completion of DTA proceedings and the filing of a renewed petition for certiorari to review the court's jurisdictional ruling in *Boumediene I*.  The court has not yet acted on the motion.  This case is presently before the D.C. Circuit on an interlocutory appeal (No. 05-5398) and the government has moved to dismiss in that case.

While questions of jurisdiction are being decided, as they are here, the court in question still has the authority to issue orders maintaining the status quo of the petition. In fact, two of the Justices in the denial of certiorari in *Boumediene II* specifically charged the courts with preventing any actions by Respondent that would damage Petitioner's ability to exhaust his remedies under the DTA.[9]   In the alternative, should this

---

[9] The Justices specifically expressed concern regarding maintenance of the status quo during the litigation: "Were the Government to take additional steps to prejudice the position of Petitioner in seeking review in this court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" *Boumediene II*, 127 S. Ct. at 1478 (quoting *Padilla v. Hanft*, 126 S. Ct. 1649, 1650 (2006)).

Court determine that it does not have jurisdiction over these habeas claims, Petitioner requests that the underlying motion be transferred to the Court of Appeals pursuant to 28 U.S.C. § 1631, for consolidation with his DTA petitions (to be filed shortly herewith).

**1. It Would Be Premature for This Court to Dismiss Petitioner's Habeas Actions for Lack of Jurisdiction.**

Respondent argues that dismissal of this habeas action is consistent with the established law of this Circuit (*Boumediene I*) as well as the clear intent of Congress as expressed within the MCA.[10] This argument fails to recognize that this Court does not have jurisdiction over the merits of this case until the Court of Appeals issues its mandate in *Boumediene I*, and that furthermore, the holding in *Boumediene I* is neither final nor binding upon this court. Moreover, the constitutionality of the statute is still being litigated. As a matter of necessary predicate, the Supreme Court has openly invited habeas counsel to exhaust all available remedies in order to re-petition the Court for review. Dismissal at this time would be premature. Until the constitutionality of the MCA has been resolved, it is more appropriate to maintain the stay of these habeas actions.

    **A.** *Boumediene I* **Is Not Binding Upon This Court.**

---

[10] "Petitioner's motions seek relief that is contrary both to the law of the Circuit that these cases should be dismissed for want of jurisdiction, and to the clear intent of Congress, expressed in the MCA, to withdraw District Court jurisdiction over the detainees' habeas cases." Motion to Dismiss at 1.

4

Because the Court of Appeals has not yet issued its mandate in *Boumediene I*, this Court does not presently have jurisdiction over the merits of this case and cannot act on the government's motion to dismiss. The law of this circuit is that "[t]he filing of a notice of appeal, including an interlocutory appeal, 'confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal.'"[11]

The *Boumediene* Petitioners have asked the court to stay the issuance of its mandate pending the completion of DTA proceedings and the filing of a renewed petition for certiorari to review the court's jurisdictional ruling in *Boumediene I*. The court has not yet acted on the motion. This case is presently before the D.C. Circuit on an interlocutory appeal (No. 05-5398) and the government has moved to dismiss that case. But the "district court does not regain jurisdiction over those issues until the court of appeals issues it mandate."[12]

Moreover, this Court is not obligated to rotely apply the Court of Appeals' conclusions regarding the jurisdictional implications of the MCA. It has long been held that courts have jurisdiction to determine their own jurisdiction. This type of threshold jurisdictional determination, which must be made in each case based on its own facts, is precisely what the Supreme Court did in *Ex parte Milligan,* 71 U.S. 2 (1866). In discussing the

---

[11] *United States v. DeFries*, 129 F.3d 1293, 1302 (D.C. Cir. 1997) (quoting *Griggs v. Providence Consumer Discount Co.*, 459 U.S. 56, 58 (1982)).

[12] *DeFries*, 129 F.3d at 1302. The reasoning is one of judicial economy. The so-called "mandate rule" "prevents the waste of judicial resources that might result if a district court, prior to the issuance of the appeals court's mandate, proceeds with a case, ruling on motions and hearing evidence, after which the appeals court reverses its original decision on rehearing." *DeFries* at 1303.

5

authority of the courts to address Milligan's claims that a writ of habeas corpus should issue notwithstanding action that suspended the writ, the Supreme Court stated:

> The suspension of the privilege of the writ of habeas corpus does not suspend the writ itself. The writ issues as a matter of course; and on the return made to it the court decides whether the party applying is denied the right of proceeding any further with it.

*Ex parte Milligan,* 71 U.S. at 130-131.  The Court then went on to consider whether the facts showed "that Milligan was a prisoner of war, and, therefore, excluded from the privileges of the statute." *Id.*  The Court concluded that Milligan was not a prisoner of war and not covered by the suspension statute; therefore, the Court granted the writ.  *Id.*   Similarly, in *Duncan v. Kahanamoku,* 327 U.S. 304 (1946), the Court took jurisdiction and determined that the petitioner did not fall within the class of people to whom the Hawaiian martial law declaration applied.  *See also United States v. Villato,* 2 U.S. 370 (C.C. Pa. 1797) (where prisoner had not been naturalized, the writ was granted to free him from treason charge).   Nothing precludes this Court from conducting its own investigation into the jurisdictional issues involved in Petitioner's claims.

### B.  The Constitutionality of the MCA Is Currently Being Litigated.

Respondent argues that the law of the circuit is settled, but this is premised upon an incorrect interpretation of *Boumediene I*.    While the Court of Appeals based its decision in *Boumediene I* upon its reading of the MCA, the constitutionality of the MCA itself is still in dispute.   On February 20, 2007, a split panel of the Court of Appeals decided combined cases involving aliens imprisoned at Guantánamo Bay and held that post-*Rasul* statutes deprived courts of jurisdiction over the habeas actions brought by

6

Petitioner in those cases.[13]  The *Boumediene* Petitioners filed a writ of certiorari and, on April 2, 2007, the Supreme Court denied certiorari, with both a three-Justice dissent and a statement respecting the denial of certiorari.[14]  In their concurrence, however, Justices Kennedy and Stevens held that, given the Court's "practice of requiring the exhaustion of available remedies as a precondition to accepting jurisdiction over applications for the writ of habeas corpus," denial of certiorari was appropriate "*at this time*." (emphasis added)[15]  It therefore appears that five Justices will give serious consideration to a renewed petition for certiorari seeking review of the decision in *Boumediene I*, following Petitioner's exhaustion of their DTA remedies.  A majority of the Supreme Court, in other words, has left open the possibility that the Court of Appeals' holding is erroneous and that the Petitioner have the right to pursue habeas relief in the district courts.[16]

While Respondent dismisses this process as a "speculative chain of events,"[17] in reality, this process is well underway.  Two Supreme Court Justices have expressly invited an exhaustion of remedies, and the Court of Appeals singled out a

---

[13] *Boumediene I*, 476 F.3d at 981.

[14] *Boumediene II,* 127 S. Ct. 1478 (2007).

[15] *Id.* at 1478.

[16] Indeed, the Supreme Court may reach these questions sooner, as there is a case currently pending before that Court that directly concerns the MCA jurisdictional holding of the Court of Appeals.  This case is an original habeas corpus petition in *In re Ali*, No. 06-1194, which challenges the MCA jurisdictional holding of the Court of Appeals.  The Supreme Court considered the *Ali* petition sufficiently serious that it directed the government to respond to the petition by April 16, 2007.

[17] Motion to Dismiss at 5.

failure to exhaust remedies as a reason for the dismissal of the petition of the *Boumediene* Petitioners.[18] There is nothing "speculative" about this; both holdings cited by Respondent as authorities for their motion to dismiss have implied that their holdings may have been decided differently had Petitioner exercised this alternative option. Until that option has been exhausted by scores of other habeas cases (including this one), *Boumediene I* should be treated as it is – the first in a series of many decisions involving distinct allegations and legal theories that may be taken into consideration, but are not binding upon any of the district courts. *See Texas v. Cobb,* 532 U.S. 162, 169 (2001) ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue."); *see also United States v. Booker*, 543 U.S. 220, 239-242 (2005) (limiting *stare decisis* effect of cases where constitutional issue was not raised or resolved).

**2. The Court Has the Discretion to Issue a Stay-and-Abey Order, and Such an Order Is Mandated Where a Procedural Bar May Prevent Future Habeas Review.**

Staying this action is consistent with Supreme Court directives in the analogous situation when a federal court is presented with unexhausted habeas claims under 28 U.S.C. § 2254. In *Rhines v. Weber*,[19] the Supreme Court explicitly approved the stay-and-abey procedure requested here by Petitioner in the context of federal habeas corpus proceedings. The Court held that district courts have the discretion to issue stay-

---

[18] *Boumediene I*, 476 F.3d at 994.

[19] *Rhines v. Weber*, 544 U.S. 269 (2005).

and-abey orders in lieu of dismissal where alternate remedies have yet to be explored in certain habeas actions. Moreover, where there is (i) just cause, (ii) no intent to delay on the part of the Petitioner, and (iii) a likelihood of success, it would be an abuse of discretion for the court *not* to issue a stay-and-abey order.

### A.  The District Court Has Discretion to Enter a Stay.

In *Rhines*, the prisoner filed in federal court a mixed habeas petition, one containing both claims exhausted through the state court system and unexhausted claims. The Court recited its precedent in *Rose v. Lundy*,[20] in which it imposed a requirement of "total exhaustion" with respect to mixed petitions and, on that basis, had directed the federal courts to dismiss mixed petitions without prejudice and instructed affected Petitioner to present their unresolved claims in state court.[21]

Yet the *Rhines* Court observed that, at the time of *Lundy*, there was no statute of limitations on the filing of federal habeas corpus petitions, which meant that Petitioner could return to federal court following exhaustion of their state claims "with relative ease."[22] Congress' enactment of a limitations period for federal habeas petitions after the *Lundy* decision meant that the petitioner's federal habeas claim could become procedurally barred, as the petitioner pursued unexhausted state claims following a dismissal without prejudice by federal court. Recognizing that problem, the *Rhines* Court allowed district courts to issue stay-and-abey orders at their discretion.

---

[20] *Rose v. Lundy*, 455 U.S. 509 (1982).

[21] *Id.* at 522.

[22] *Rhines*, 544 U.S at 274.

9

As discussed above, this case and other pending habeas actions by Guantánamo prisoners now pending in this Court have a genuine prospect of further Supreme Court review to decide the federal courts' jurisdiction in their cases. Petitioner's right to proceed by seeking a writ of habeas corpus, to the extent the Supreme Court may decide that right exists, could be impaired if this Court were to dismiss their petition now. In this way, the situation is comparable to *Rhines*, where it was possible (yet not certain) that an otherwise valid federal habeas claim could be barred as a result of pursuing unexhausted claims in another forum.

**B. It Would Be an Abuse of Discretion for This Court *Not* to Issue an Order to Stay-and-Abey, Pursuant to *Rhines*.**

Respondent attempts to minimize the significance of *Rhines* by stating that the Guantánamo habeas cases, unlike *Rhines*, do not involve "any temporal bar to a habeas petition," and the "authority of a court to enter a stay is constrained by statute."[23] However, Respondent fails to note that the constitutionality of the operative statute in *Rhines* (the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")) was not being actively litigated as part of the habeas petition, as it is here. In fact, in the absence of intentional dilatory tactics by the petitioner, the *Rhines* Court went on to hold that "it would likely be an abuse of discretion to deny a stay and to dismiss" a petition if the petitioner has good cause for the failure to exhaust and the unexhausted claims are potentially meritorious.[24] Petitioner in the present case satisfies all three preconditions – good

---

[23] Motion to Dismiss at 7.

[24] *Rhines*, 544 U.S. at 278; *accord Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005).

cause, no deliberate delay, and potentially meritorious claims – under which failure to stay-and-abey would constitute an abuse of discretion.

First, there is good cause for the failure to exhaust. Where the petitioner in *Rhines* at least had the ability to pursue both modes of relief at the outset of his case, the potential remedy in Petitioner's case did not exists after their habeas corpus petition was filed and did not purport to provide the habeas relief to which Petitioner were entitled at the time the habeas action was filed. The questions left open in the Supreme Court's decision in *Rasul v. Bush*,[25] which established a right to proceed under § 2241 at the time Petitioner submitted their documents, and the subsequent DTA and MCA have resulted in major complexities that left the legal landscape opaque. The Court of Appeals required several rounds of briefing over two years before it could issue its decision in February 2007. Petitioner thus had excellent reasons for not initiating the DTA procedures until the denial of certiorari in *Boumediene II*.

Second, Petitioner has done nothing to deliberately delay this case. Counsel filed Petitioner's petition for habeas corpus relief on October 16, 2006, only days after becoming co-counsel with the Center of Constitutional Rights, which had obtained the necessary next friend authorizations.

Third, the claims raised both in this Court and in the DTA Petition are potentially meritorious. Counsel seek additional factual discovery regarding the circumstances under which statements attributed to Petitioner were made, having reason to believe that they were made in violation of the Department of Defense's own standards and proce-

---

[25] *Rasul v. Bush*, 542 U.S. 466 (2004).

dures as well as the laws and Constitution of the United States. Counsel further believes that Petitioner has been improperly designated an enemy combatants, as Respondent has not provided any independent evidence suggesting that Petitioner was engaged in or supporting hostile actions against the United States and its coalition allies between September 11, 2001 and the time of their capture.

Respondent argues that Petitioner has no statutory right to have their cases abeyed as he exhausts alternative remedies.[26] Again, Respondent misinterprets the holding in *Rhines*. By testing whether the DTA petition to the Court of Appeals provides an adequate substitute for their habeas proceedings in this court, Petitioner are challenging the constitutionality of the very statute Respondent is citing as the basis for dismissing said proceedings. Not only is abeyance within this court's discretion, but given the good cause for delay, absence of dilatory tactics, and potentially meritorious claims, it would be an abuse of that discretion not to issue a stay-and-abey order.

**3. Maintaining the Status Quo Is Necessary, As Dismissal Would Irreparably Harm Petitioner in Contravention of the Express Instruction of the Supreme Court.**

In denying certiorari in *Boumediene II*, Justices Kennedy and Stevens expressly charged courts, including this one, with a watchdog role. In the event that the government was to "take additional steps to prejudice the position of Petitioner in seeking review in this court," courts were tasked with "[acting] promptly to ensure

---

[26] Motion to Dismiss at 6.

that the office and purposes of the writ of habeas corpus are not compromised."[27] In their Motion to Dismiss, Respondent seek to have this court dismiss the Amended Protective Order and all other access-related orders currently in place in this habeas proceeding and establish a brand-new set of procedures at the Court of Appeals level. Such actions could cause irreparable damage to Petitioner's ability to exhaust his alternative remedies. Were the new protective order proposed by Respondent in *Bismullah v. Rumsfeld*[28] implemented, it would have a chilling effect upon the attorney-client relationship, in that communications from counsel would no longer be privileged, but subject to screening and redaction by the Department of Defense. In addition, counsel would be limited to three visits with their clients, after which they would presumably be cut off from ever seeing their clients again. Negotiating a protective order that ensured protection of attorney-client privilege and access to Petitioner could drag on for months; meanwhile, in the absence of a protective order, Respondent could deny counsel all access to his client. While jurisdictional issues are being settled, it is within the discretion of this court to maintain the status quo with respect to protective orders and counsel access procedures to ensure that communications between Petitioner and his client are not summarily terminated by a statute whose constitutionality is in the process of being litigated.

---

[27] *Boumediene II*, 127 S. Ct. at 1478 (quoting *Padilla v. Hanft*, 126 S. Ct. 1649, 1650 (2006))

[28] Protective Order, *Bismullah v. Rumsfeld,* No. 06-1197 at 36-37 (August 25, 2006) ("Documents marked 'legal mail' by counsel shall be subject to content review and security and contraband screening by the DoD Privilege Team."), p 37 ("Counsel will be notified with respect to legal mail that, upon review, will be redacted or screened out.").

### A. The Court Should Maintain the Status Quo Pending Resolution of Jurisdictional Issues.

There is a long-established principle that, where the question of jurisdiction is still being settled, the courts have "authority from the necessity of the case to make orders to preserve the existing conditions and subject of the petition." *United States v. United Mine Workers,* 330 U.S. 258, 291 (1947) (quoting *United States v. Shipp*, 203 U.S. 563, 573 (1906)); *see also Kircher v. Putnam Funds Trust*, 126 S.Ct. 2145, 2155 (2006) (a federal court's adjudicatory authority includes "its authority to determine its own jurisdiction").   This Circuit has not hesitated to apply these principles:

> Of course, whether or not there was jurisdiction to decide the merits, until the question of jurisdiction is determined, there was "authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition ...." ... Clearly there was "power to preserve existing conditions while ... determining [the] authority to grant injunctive relief."

*In re President and Directors of Georgetown College,* 331 F.2d 1000, 1005 (D.C. Cir. 1964) (quoting *United States v. United Mine Workers*, 330 U.S. 258, 291 (1947)).

The District Courts have recognized that, regardless of the ultimate resolution of jurisdictional questions, the courts are authorized to enter orders necessary to the ultimate litigation. For example, Judge Leon, who found the rights of the prisoners extremely limited in scope, entered an order on the merits of Respondent's motion for filter team review of attorney-client material, denying the request (*Boumediene v. Bush,* 450 F. Supp. 2d 25 (D.D.C. 2006); Judge Robertson granted the same request on the merits in *Hicks v. Bush,* 452 F. Supp. 2d 88 (2006). Additionally, counsel in most of the Guantánamo pris-

14

oner litigation have been operating under the protective order first authorized by the District Courts in *Al Odah* for almost two years.

### B. Maintaining the Status Quo is Necessary to Prevent Irreparable Harm to Petitioner's Claims.

Maintaining the status quo is necessary here in order to prevent irreparable harm. This Court should carefully protect the status quo by maintaining the orders entered to date to assure that Petitioner is not prejudiced in his ability to litigate the DTA action as well as to preserve potential remedies before this court. Issuance of the Protective Order, and the client access provided therein, is absolutely critical for effectively exhausting Petitioner's remedies under the DTA. Without the Protective Order in place, there is no legal mail channel; there is no privileged communication between attorney and client; base visits would be prohibited. Absent the protections of a Protective Order, counsel will be unable to provide the Court of Appeals with sufficient factual information to make a balanced and informed decision regarding the merits of his DTA Petition.

Also, Respondent has signaled its intent to dramatically restrict prisoners' access to counsel, proposing a protective order at the Court of Appeals level that would, among other things, require all legal mail from counsel to Petitioner to be first screened and redacted by Department of Defense employees. Secondly, counsel would be restricted to three visits with their clients. It is unclear whether counsel who have already visited their clients three times would be permanently barred from ever visiting their clients again. Third, Department of Defense officials would have unilateral authority to decide

whether to permit counsel to see the evidence used to justify a prisoner's enemy combatant designation.

Counsel for Guantánamo prisoners have labored under extraordinary circumstances to cultivate relationships with their clients. Counsel have had to overcome the government's attempts to bar them completely, well-documented instances of anti-Semitic statements designed to drive wedges between the prisoners and their counsel, and onerous hurdles for traveling to the base. The proposed protective order is a naked attempt by the government to impede prisoners from challenging the factual bases for their detention and return to a pre-*Rasul* state of the world.

Maintenance of the status quo is critical to foreclosing Respondent from prejudicing Petitioner's ability to litigate – at the District Court or Circuit Court level – these issues. In the event the case is remanded, or if the DTA procedures prove an inadequate substitute for constitutionally-required habeas corpus procedures, this Court should be in position to proceed immediately on the issues raised. Petitioner have waited nearly three years to enjoy the promise of *Rasul*, and should be spared any further delays that would ensue were it necessary to negotiate a brand new set of protective orders and access procedures.

**4. In the Event this Court Determines it Lacks Jurisdiction, Petitioner's Cases Should Be Transferred to the Court of Appeals Pursuant to 28 U.S.C. 1631.**

If the Court nevertheless finds that it lacks jurisdiction to hear this case and declines to enter a stay, it should transfer the habeas action to the Court of Appeals

16

for consolidation with Petitioner's DTA petition (to be filed). The transfer statute provides in relevant part:

> Whenever a civil action is filed in a court…or an appeal…is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it was transferred.

28 U.S.C. § 1631. As described above, it is in the interest of justice for this Court to ensure that the current Protective Order remains in place, thus maintaining counsel's unbroken access to evidence needed to prepare the DTA petition, as well as affording Petitioner an opportunity to participate in the preparation of his DTA submissions, pending the Court of Appeals' decision on how to govern these proceedings.[29] It is also in the interest of justice to preserve the status quo, where the Court of Appeals has jurisdiction over the same general subject matters, and must consider issues of client access and the scope of merits review, but has not yet had the opportunity to act. Under the circumstances, including the uncertain and shifting scope of federal court jurisdiction, this Court (at a minimum) should ensure that there is no gap in

---

[29] The Government has taken the position both in the Court of Appeals and in this Court that the prisoners' habeas corpus cases should be transferred pursuant to 28 U.S.C. § 1631, and has cited legislative history of the DTA that it suggests supports such transfer. *E.g.,* Supplemental Reply Brief of the Federal Parties, at 28-31, *Al Odah v. United States*, Nos. 05-5062, et al. and 05-5064, et al. (D.C. Cir. March 17, 2006) (citing comments of Senator Graham, *inter alia*); *Hamdan v. Rumsfeld*, Civil Action No. 1:04-cv-01519-JR, Respondent's Reply in Support of Motion to Dismiss, at 45 n.24 (D.D.C. Dec. 8, 2006).

governing procedures until the Court of Appeals can fully consider these matters in *Bismullah* and *Parhat*.[30]

## Conclusion

For the foregoing reasons, this Court should deny Respondent's Motion to Dismiss and enter an order preserving the status quo by continuing its stay of litigation going to the merits of the pending petition for a writ of habeas corpus and holding such litigation in abeyance pending the outcome of the Petitioner's DTA petition.

DATED at St. Johnsbury, Vermont on May 3, 2007.

                                                      Respectfully submitted,

                                                      Counsel for Petitioner:

                                                      By: /s/ David C. Sleigh
                                                      Sleigh & Williams
                                                      364 Railroad Street, Ste. E
                                                      St. Johnsbury, VT 05819
                                                      802-748-5176
                                                      linda@sleighandwilliams.com

---

[30] *Bismullah*, No. 06-1197, and *Parhat v. Gates*, No. 06-1397.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

*FAIZ AHMED YAHIA SULIMAN,*

                 Petitioner

    v.                                             Civ. No. 1:06-CV-01758 (RMC)

**GEORGE W. BUSH,** *et al.,*

                 Respondent

## **PROPOSED ORDER**

Upon consideration of Petitioner's Opposition to Respondent's Motion to Dismiss, it is

ORDERED that (1) the Respondent's Motion to Dismiss the habeas actions of Petitioner *FAIZ AHMED YAHIA SULIMAN* is denied, and (2) that these actions be held in abeyance pending Petitioner's exhaustion of their remedies in the Court of Appeals under the Detainee Treatment Act of 2005 and the filing in the Supreme Court of a renewed petition for certiorari to review the Court of Appeals' jurisdictional holding in *Boumediene v. Bush.*

IT IS SO ORDERED.

DATED:

                                                                  _____
                                                                  United States District Judge
                                                                  Judge Collyer

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

FAIZ AHMED YAHIA SULIMAN, ET AL.

     v.                            Criminal File :1:06-cv-1758-RMC

GEORGE W. BUSH, ET AL.

## CERTIFICATE OF SERVICE

     I hereby certify that on May 3, 2007, I, David C. Sleigh, of Sleigh & Williams, electronically filed PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO DISMISS with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to the following:

Nicholas A. Oldham, Nicholas.Oldham@usdoj.gov

Terry M. Henry , terry.henry@usdoj.gov

Barbara Olshansky, bjo@ccr-ny.org

                                                By: /s/David C. Sleigh
                                                Sleigh & Williams
                                                364 railroad Street, Ste. E
                                                St. Johnsbury, VT 05819
                                                802-748-5176
                                                linda@sleighandwilliams.com